FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2007 JAN -9 AM 9: 52

CLERK
SO. DIST. OF GA.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

### SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | Case No. CR406-311 |
| ) | |
| ROTAISHA S. McKINNEY, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Defendant has filed a motion to suppress all evidence seized following the stop of her vehicle on August 9, 2006. Doc. 13. The Court held an evidentiary hearing on this matter on January 3, 2007, at which time testimony was offered by the government from Corporal John Peny of the Bryan County Sheriff's Department. The Court has also viewed a digital recording of the traffic stop that led to defendant's arrest. For the reasons that follow, it is recommended that the motion to suppress be DENIED.

## I. BACKGROUND

On August 9, 2006, Corporal Peny was operating a stationary radar at mile post 82 on Interstate 95 when he observed a vehicle traveling at a

high rate of speed. Corporal Peny set out to initiate a stop on the speeding vehicle when he noticed a Dodge Charger driven by defendant weave several times within the center lane and then cross from the center lane into the right-hand lane before abruptly returning to the center lane. Concerned more about the weaving than the speeding violation, the officer elected to conduct a traffic stop on defendant's vehicle at 9:23 p.m.[1]

Corporal Peny approached defendant's vehicle, explained the reason for the stop, and asked defendant to produce her driver's license and vehicle registration. Defendant attributed her weaving to the fact that she had been using her cellphone. She provided her driver's license and explained that the automobile was a rental vehicle. When Corporal Peny requested the rental agreement for the vehicle, defendant originally produced a rental agreement for a Dodge Magnum and a second agreement for a Dodge Charger, vehicles which defendant had previously rented. Corporal Peny informed defendant that these rental agreements had expired and that

---

[1]Cpl. Peny's patrol car had a dash-mounted camera that recorded the traffic stop. The parties have relied upon the times reflected on that digital recording, and the Court will do the same. While the video is clear, the audio portion of the recording is sometimes difficult to interpret and malfunctions altogether at one point. The Court has relied on both the recording and the officer's unrebutted testimony in finding the facts surrounding this roadside encounter.

neither of the agreements covered the vehicle she was operating at the time of the stop. After searching for some time, defendant was unable to produce the rental agreement for the vehicle she was operating. Defendant, whose license reflected a Brunswick address, informed Peny that she had traveled to Savannah in order to exchange the vehicle because there was a problem with its alignment. Defendant stated that she was exchanging the vehicle so that she could take her children to Disney World for a vacation and that she needed to get home that evening to pick up her children from the babysitter to get them ready to go to school. The officer noticed that defendant appeared to be somewhat nervous during this exchange.

Around 9:26 p.m., after discussing the reason for the stop and the rental agreements with defendant, Corporal Peny informed defendant that he was going to run a check on her license. He further stated that he intended to perform a check on the vehicle's tag, as she had failed to produce a valid rental agreement for the vehicle. Corporal Peny then returned to his vehicle and called in the license and tag information. At 9:37 p.m., some fourteen minutes into the stop, Corporal Peny returned to defendant's vehicle to inform her that there was a delay in receiving the

information regarding her license and the vehicle's registration because the officials running the computer check were backed up. Within several minutes Corporal Peny received the information on defendant's license but not on the vehicle's registration. While awaiting information on the ownership of the vehicle, Corporal Peny requested that a drug dog come to the scene and perform a sniff of the vehicle.[2] He then spoke with defendant at 9:40 p.m. and sought her consent to search the vehicle. Defendant neither denied nor granted consent to search but instead continually inquired as to Corporal Peny's reasons for wanting to search the vehicle. The dog arrived at the scene at 9:44 p.m., within a few minutes of the call, and alerted on the right rear portion of the vehicle a few seconds later. Approximately twenty-one minutes had elapsed between the initiation of the traffic stop and the drug dog's alert. A subsequent search of the vehicle uncovered a box containing cocaine, which led to defendant's arrest under the current charges.

---

[2]Corporal Peny testified that Interstate 95 is a known drug corridor and that deputies of the Bryan County Sheriff's Department often work in teams along the interstate, with one officer performing routine traffic patrol while another deputy is stationed nearby with a drug dog. The Court has seen this technique employed in prior cases. See, e.g., United States v. Kevin Robinson, CR406-95 (doc. 45).

4

## II. ANALYSIS

As an initial matter, it is undisputed that Corporal Peny had probable cause to initiate the traffic stop on defendant's vehicle upon observing the vehicle weaving. Indeed, defendant conceded at the time of the stop that her use of a cellphone had caused her to weave on the roadway. Defendant, however, contends that the search of her vehicle was unlawful because Corporal Peny unreasonably extended the length of the traffic stop in order to secure the presence of the drug dog.

While a dog sniff performed during a routine traffic stop does not violate the Fourth Amendment, "a seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 543 U.S. 405, 407-408 (2005) (holding that a dog sniff of a vehicle does not infringe a person's constitutionally protected interest in privacy and therefore does not change the character of a traffic stop that is "lawful at its inception and otherwise executed in a reasonable manner"). See also United States v. Boyce, 351 F.3d 1102, 1110 (11th Cir. 2003) (an officer may not prolong a traffic stop for the sole purpose of

securing the presence of a drug dog). Defendant argues that Corporal Peny "prolonged the detention of the defendant beyond the time necessary to issue a ticket or warning citation." Doc. 13. Defendant contends that Corporal Peny had no specific or articulable facts to justify any detention beyond a routine traffic stop. Id.

Absent reasonable suspicion or the motorist's consent, a traffic stop can last no "'longer than necessary to process the traffic violation.'" United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999) (quoting United States v. Holloman, 113 F.3d 192, 196 (11th Cir. 1997)). During the course of a traffic stop, "[t]he officer may . . . prolong the detention to investigate the driver's license and the vehicle registration, . . . and may do so by requesting a computer check." United States v. Purcell, 236 F.3d 1274, 1278 (11th Cir. 2001) (citing Delaware v. Prouse, 440 U.S. 648, 657-59 (1979)).[3] Moreover, "'the inability to offer proof of ownership or authorization to operate the vehicle has figured prominently in many of our cases upholding further questioning.'" Pruitt, 174 F.3d at 1220 (quoting

---

[3]Indeed, in most instances it is permissible for an officer to request a criminal history report as part of a routine computer check of the traffic offender's driver's license and registration. Purcell, 236 F.3d at 1278-79.

<u>United States v. Hunnicutt</u>, 135 F.3d 1345, 1349 (10th Cir. 1998) ("'[a]mong those factors that have justified further questioning are having no proof of ownership of the vehicle, having no proof of authority to operate the vehicle, and inconsistent statements about destination.'")).

In the instant case, approximately twenty-one minutes elapsed from the initiation of the traffic stop until the drug dog alerted on defendant's vehicle.[4] After explaining the reason for the traffic stop to defendant and determining that she could not produce a rental agreement on the leased vehicle, Corporal Peny radioed a request for a computer check of defendant's driver's license and the vehicle's license plate. When the computer check was delayed by an inability to access the Georgia Crime Information Center (GCIC) data bank, he politely explained the reason for the delay to defendant during the stop. Although Corporal Peny received

---

[4]In considering whether the duration of a stop is constitutional, courts examine the time that elapsed between the initial stop and the time the officer obtained consent or other justification for the search. <u>See</u> <u>Purcell</u>, 236 F.3d at 1279; <u>United States v. Hernandez</u>, 418 F.3d 1206, 1210 (11th Cir. 2005). The Eleventh Circuit, addressing the length of a constitutional stop, has stated that "[w]here at its inception, a traffic stop is a valid one for a violation of the law, we doubt that a resultant seizure of no more than seventeen minutes can ever be unconstitutional on account of its duration: the duration is too short." <u>Hernandez</u>, 418 F.3d at 1212 n.7. While the traffic stop at issue in the instant case falls outside of this presumptively legitimate time-frame, this fact does not establish that the stop was unreasonably prolonged. Instead, the Court must consider all the circumstances of the stop in order to determine the reasonableness of its duration.

information regarding the status of defendant's license, he was entitled to secure information related to the vehicle's ownership and registration as part of a routine traffic stop. Boyce, 351 F.3d at 1106; Purcell, 236 F.3d at 1278. Since defendant was unable to furnish a valid rental agreement for the vehicle she was operating, Corporal Peny was justified in prolonging the traffic stop for a reasonable period until he could determine that she had authority to operate the vehicle or, at the very least, to ensure that the vehicle was not stolen. While awaiting this information, Corporal Peny requested that a drug dog come to the scene to perform a free air scan of the vehicle's exterior. Thus, the original traffic stop was still ongoing when the drug dog arrived at the scene and alerted on defendant's vehicle.[5] The drug dog, therefore, arrived on the scene and alerted on defendant's vehicle during the course of a valid traffic stop, and there was no unreasonable extension of the traffic stop in order to secure the presence of the drug dog.

---

[5]This fact distinguishes the instant case from Boyce, where the officer initiating the traffic stop did not originally request a criminal history check on the driver of a vehicle as a part of the traffic stop, but rather requested the check several minutes after he completed a warning citation for the driver. Boyce, 351 F.3d at 1107. In the instant case, Corporal Peny requested a check of the vehicle's tag as part of his "original traffic stop investigation" and was still awaiting an answer to his inquiry when the drug dog arrived at the scene. Id.

## III. CONCLUSION

The parties do not dispute that Corporal Peny legitimately initiated a traffic stop on defendant's vehicle for weaving. During the course of the stop, prior to receiving information from the GCIC regarding the ownership of the vehicle or defendant's authority to operate it, Corporal Peny requested that a drug dog come to the scene and perform a scan of defendant's vehicle. The drug dog arrived on the scene and alerted on defendant's vehicle within some twenty-one minutes of the initial encounter, while the traffic stop was still in progress. Accordingly, no unreasonable extension of the stop occurred in this case, and defendant's motion to suppress the evidence recovered during the search of her vehicle following the drug dog's alert should be DENIED.

**SO REPORTED AND RECOMMENDED** this 8TH day of January, 2007.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA